IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Michael D. Myers, #226450, | ) | C/A No.: 1:11-450-TLW-SVH |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Warden of McCormick Correctional | ) | |
| Institution, | ) | |
| | ) | |
| Respondent. | ) | |

Petitioner Michael D. Myers is an inmate at the McCormick Correctional Institution of the South Carolina Department of Corrections. He filed this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on Respondent's motion for summary judgment and return. [Entry #30, #31]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Petitioner of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to Respondent's motion. [Entry #32]. Petitioner filed a response in opposition to Respondent's motion. [Entry #35]. Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that Respondent's motion for summary judgment be granted.

I.      Procedural Background

Petitioner was indicted by the Calhoun County grand jury in November 2001 for Attempted Armed Robbery and in June 2002 for Assault and Battery with Intent to Kill

(ABWIK), Possession of a Weapon during the Commission of Certain Crimes, and Possession of a Firearm by a Person Convicted of a Crime of Violence. [Entry #31-1 at 131–139]. Petitioner was represented by Calhoun County Public Defender Martin Hanks, Esq. and pled guilty before the Honorable Diane S. Goodstein on June 4, 2002. [Entry #31-1 at 3–68]. Judge Goodstein sentenced Petitioner to twenty years confinement on the assault and battery with intent to kill conviction; twenty years confinement on the attempted armed robbery conviction; five years confinement on the possession of a weapon during the commission of a certain crime conviction; and five years confinement on the possession of a firearm by a person convicted of a crime of violence, all to be served concurrently. [Entry #31-1 at 66–67].

Petitioner did not file a direct appeal. Petitioner filed a pro se application for post-conviction relief (PCR) on June 2, 2003, in which he alleged lack of subject matter jurisdiction, ineffective assistance of counsel, and that his guilty plea was involuntary. [Entry #31-3]. A PCR evidentiary hearing was held before the Honorable Steven H. John on August 3, 2004, at which Petitioner and his counsel, Robert FitzSimons, Esq., appeared. [Entry #31-1 at 69–100]. On October 27, 2004, Judge John entered an order of dismissal. [Entry #31-1 at 101–108].

On June 15, 2005, Petitioner filed a second Application for Post-Conviction Relief (2005-CP-09-95), alleging ineffective assistance of PCR counsel and ineffective assistance of trial counsel. [Entry #31-1 at 109–116]. On July 18, 2008, the PCR Court issued an Order Granting Belated PCR Appeal. [Entry #31-1 at 125–128]. Petitioner

2

timely served and filed his Notice of Appeal on November 25, 2008. [Entry #31-5]. On appeal, Petitioner was represented by Wanda H. Carter, Deputy Chief Appellate Defender with the South Carolina Commission on Indigent Defense, Division of Appellate Defense. The appeal of the PCR Court's Order was perfected with the filing of Petitions for Writ of Certiorari on June 8, 2009. [Entry #31-6, #31-7]. In an Order filed April 21, 2010, the South Carolina Supreme Court granted the Petition for Writ of Certiorari from the second PCR, and denied the Petition for Writ of Certiorari to the first PCR, dispensed with further briefing, and proceeded with a belated review of Judge John's order. After consideration, the Supreme Court denied the petition for a writ of certiorari from Judge John's order. The Remittitur was issued on May 11, 2010.

II.    Discussion

A.    Federal Habeas Issues

Petitioner raises the following six grounds in his federal petition for a writ of habeas corpus, as amended (amendments contained in Entry #24 are in italics):

**Ground One:**    Denial of Effective Assistance of Counsel/Ineffective Assistance of Counsel.

Supporting Facts: Counsel was ineffective for failing to object when judge read charge as being that of someone convicted of a crime of violence. Counsel was also ineffective for withholding the knowledge that there was a plea bargain which was to the advantage of defendant. Counsel never mentioned plea at no time, instead told me that I was facing life imprisonment if I lost at trial. I now argue that it was unrealistic to think that some one who came down to pleading guilty rather than risk...Life would have gone through with his earlier plea for less than the twenty years he received had he known that one existed. Whereas fifteen instead of twenty may have

3

changed the balance in favor of accepting the earlier plea. For facts supporting claim see App. P. 73, Line 11-14, App. P. 76, Line 8-17, App. P. 76-77, line 23-2. *Failed to point out prosecutorial misconduct outlined below. b) A police officer was the sole witness before the grand jury on at least three of the indictments and there was no witness on one of the four indictments. "Prosecutor Misconduct." a._ Foreman signed and acknowledged indictment on June 3, 2002/Nov 26, 2001 but term of court was not until June 4, 2002 when the grand jury convened. b.) The state presented one state officer (a police officer) before the grand jury as the sole witness before that body; hence, Marten Banks, Esquire, should have quashed the indictments. 3. "Ineffective assistance of counsel when counsel failed to challenge the face and authority of the indictment when there was only one sole witness that being an officer of the court and/or state law [e]nforcement to appear before the grand jury with out more."*

**Ground Two:**     Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.

Supporting Facts: A grand jury never were presented with indictment therefore how could they have convened on the matter of indictment. It is said in the indictment that the grand jury convened on November 26, of 2001 to present upon their oath: Attempted Armed Robbery. Note there is no True Bill clock stamp certifying this indictment, and missing is signature of jury foreperson. There is no indictment number to verify this charge in the indictment. As for the indictment on the date of June 3, 2002 [Assault and Battery with intent to kill] - there is no date of arrest to this charge in warrant or the indictment, as if it is open to be served at any given time of choice in the future. Moreover, there was never a clear intent to kill to support the charge in indictment for Assault and Battery with intent to kill. Therefore I was improperly charged in indictment...Also I was improperly charged in the indictment for possession of a firearm by a person convicted of a crime of violence; since I have no prior conviction for a violent crime. The charge of assault with intent to kill is classified as being non-violent and cannot be [enhanced] by the court for the purpose of making another charge greater. Therefore, this is an error in the indictment. Therefore this charge should have been a lesser included offense. I raise the issue that this charge would be identical to the other

4

possession charge in the indictment if not for the violation given in making it a violent charge/or one that follows the conviction of a violent charge. Moreover, none of the indictments were ever presented to the grand jury, however, they wore upon their oath that they were presented with these indictments.

**Ground Three:**    Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily or with understanding of the nature of the charge and the consequences of the plea. I was unaware of the nature of charges or consequences of pleading to them in the manner which I did, and counsel didn't make clear the consequences of his manner of plea.

Supporting Facts: Whereby counsel's own statement concurring that I take a straight up plea, knowing that it would not be in the best interest to me, and withholding the fact that there was a plea offer on the table that could have been beneficial to me, and he made me aware of it or to the fact that had I taken a plea earlier the charges would have been reduced, see App. p. 73, Line 14-18.

**Ground Four:**    Denial of right of appeal.

Supporting Facts: Right of appeal was denied based on my word not being credible, however, there were witnesses who could have given credible statements on my behalf, but these witnesses were not called before the court to do so. If they were, what would have been stated was the fact that I asked counsel before them to file an appeal on my plea. My witnesses to the facts are officer Glivens who now works as a sheriff of Orangeburg County, and Officer Brown who still works at the Detention Center and Christina Kimbrough are the witnesses to my asking counsel to file for appeal. In reply to this request counsel simply made a remark about the clothing that I wore "wouldn't it be nice if you could wear those every day." Then departed the jury chambers.

**Ground Five:**    Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.

Supporting Facts: The unlawful arrest in mention occurred on or about July 3, 2001. I was in the hospital under doctor's care and

5

orders, being treated for gun wounds and had not been released from the care of the doctor. When office Brian A. Mosier, Chief Wannamaker, and another unknown officer who were stationed on the south side of my room door, had a conversation together; after which Brian A. Mosier abducted me from the hospital while I was still under the care of that facility; for the express purpose of obtaining my signature on the arrest warrants in question. Thereby officially charging me. From there I was taken to the Orangeburg County Detention Center to be processed in, but the county detention center refused to accept me, seeing what kinda shape I was in. I was then taken back to the hospital, whereupon arriving a confrontation took place between the doctor and officer who'd taken me from the hospital. In this confrontation were included some of my family members. Because no one knew that I had been taken from the hospital the doctor wanted to know who gave them permission to move me and so did my family. See hospital records to verify facts and also statements from family that were there at time, and county jail. Note also that I did make mention of these incidents to counsel along with being threatened by an officer.

**Ground Six:**       Lack of subject matter jurisdiction.

Supporting Facts: Counsel's failure to object to the fact I was being improperly charged in and or by the indictment, of being a person convicted of a crime of violence and also counsel's failure to object to the charge in the indictment of assault and battery with intent to kill, as there was never a clear intent to kill presented to support charge in the indictment. And counsel's failure to object to that of attempted armed robbery, as there was never an attempt made or implied to rob anyone, to support the charge was read in the indictment. Wherefore, I contend I'm time for charges I did not commit. *Counsel failed to challenge the sufficiency of indictments. Counsel failed to point out deficiencies in indictment.*

[Entry #1, #24].

B.    Standard for Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a

6

matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; " or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can

the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

      C.     Habeas Corpus Standard of Review

          1.     Generally

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 410. Moreover, state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

2.     Procedural Bar

Federal law establishes this court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254 ("Section 2254"). This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id.* The separate but related theories of exhaustion and procedural bypass operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. A habeas corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

a.     Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

(b)     (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that—

   (A)     the applicant has exhausted the remedies available in the courts of the State; or

   (B)     (i) there is an absence of available State corrective process; or

           (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

9

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c)     An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254.

The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR.  State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203 SCACR; S.C. Code Ann. § 17-27-10, *et seq*.; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767 (S.C. 1976).  If the PCR court fails to address a claim as is required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so

10

will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State,* 653 S.E.2d 266 (S.C. 2007).[1] Furthermore, strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

Furthermore, in filing a petition for habeas relief in the federal court, a petitioner may present only those issues that were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, regardless of whether the Supreme Court actually reached the merits of the claim. If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. *Richardson v. Turner*, 716 F.2d 1059 (4th Cir. 1983)*; Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977).

b.    Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default,[2] is the doctrine applied when a petitioner who seeks habeas corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of

---

[1]In *Bostick v. Stevenson*, 589 F.3d 160, 162–65 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not uniformly and strictly enforced the failure to file a motion pursuant to Rule 59(e), SCRCP, as a procedural bar. Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

[2]If a petitioner procedurally bypasses his state-court remedies, he is procedurally barred from raising them in federal court.

11

bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. As the Supreme Court explains:

> . . . [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10–11 (1984).

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule[,]" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith v. Murray*, 477 U.S. at 533 (*quoting Wainwright v. Sykes*, 433 U.S. 23, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required

showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *See Matthews v. Evatt*, 105 F.3d at 915 (*citing Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

### 3.    Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor that hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.* Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924 (4th

Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error.

4.    Ineffective Assistance of Counsel Claims

To prevail on an ineffective assistance of counsel claim, a petitioner must show (1) that his trial counsel's performance fell below an objective standard of reasonableness, and (2) that a reasonable probability exists that but for counsel's error, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 694 (1985). Petitioner bears the burden of proving an error and prejudice in his ineffective assistance of counsel claim. *Id.*

D.    Analysis

1.    AEDPA's Statute of Limitations

Respondent's first ground for dismissal of this Petition is that it was not timely filed under the one-year statute of limitations created by the AEDPA. As discussed briefly above, the AEDPA became effective on April 24, 1996, and substantially modified procedures for consideration of habeas corpus petitions of state inmates in the federal courts. One of those changes was the amendment of 28 U.S.C. § 2244 to establish a one-year statute of limitations for filing habeas petitions. Subsection (d) of the statute provides:

(d)    (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

(A)     the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)     the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)     the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)     the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2)     The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2254(d) (emphasis added). Subsection (d)(1)(A) provides that the one-year statute of limitations begins to run on the date the Petitioner's conviction becomes final, not after collateral review is completed. *Harris v. Hutchinson*, 209 F.3d 325, 327 (4th Cir. 2000). In South Carolina, a defendant must file a notice of appeal within ten days of his conviction. Rule 203(b)(2), SCACR. Thus if a defendant does not file a direct appeal, his conviction becomes final ten days after the adjudication of guilt. *Crawley v. Catoe*, 257 F.3d 395, 398 (4th Cir. 2001). If a defendant files a direct appeal and his conviction is affirmed, the conviction becomes final 90 days after the final ruling of the South Carolina Supreme Court. *Harris*, 209 F.3d at 328, n.1 (noting conviction becomes final on the expiration of the 90-day period to seek review by the United States Supreme Court).

15

The statute of limitations is tolled during the period that "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). The statute of limitations is tolled for the entire period of the state post-conviction process, "from initial filing to final disposition by the highest state court (whether decision on the merits, denial of certiorari, or expiration of the period of time to seek further appellate review)." *Taylor v. Lee,* 186 F.3d 557, 561 (4th Cir. 1999). "Following the denial of relief in the state courts in state habeas proceedings, neither the time for filing a petition for certiorari in the United States Supreme Court, nor the time a petition for certiorari is considered by the United States Supreme Court, is tolled." *Crawley v. Catoe,* 258 F.3d at 399.

A state collateral proceeding must be "properly filed" for the statutory tolling provisions of 28 U.S.C. § 2244(d)(2) to apply. "[A]n application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000) (footnote omitted). "When a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)." *Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005) (*quoting Carey v. Saffold*, 536 U.S. 214, 226 (2002)). Generally, federal courts use Federal Rule of Civil Procedure 6(a) in computing periods of time under 28 U.S.C. § 2244(d)(2). *Hernandez v. Caldwell*, 225 F.3d 435, 439 (4th Cir. 2000).

16

In 2000, the Fourth Circuit held that the AEDPA's statute of limitations is not jurisdictional, but subject to the doctrine of equitable tolling. The court found that equitable tolling applies only in "those rare instances where—due to circumstances external to the [Petitioner's] own conduct—it would be unconscionable to enforce the limitation against the [Petitioner]." *Harris*, 209 F.3d at 330. In 2010, the United States Supreme Court squarely considered the issue and also held that § 2244 "is subject to equitable tolling in appropriate cases." *Holland v. Florida*, 130 S.Ct. 2549, 2560 (2010); *cf. Pace v. DiGuglielmo*, 544 U.S. at 418 n.8 (noting Court assumed without deciding that AEDPA's statute of limitations could be equitably tolled for purposes of that decision because respondent assumed it did). The *Holland* Court reiterated its prior holding in *Pace* that the statute would be equitable tolled "only if [the petitioner] shows '(1) that he has been pursing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland*, 130 S. Ct. at 2562 (*quoting Pace*, 544 U.S. at 418)).

Under § 2244(d), the State bears the burden of asserting the statute of limitations. *Hill v. Braxton*, 277 F.3d 701, 704 (4th Cir. 2002). Petitioner then bears the burden of establishing that his petition is timely or that he is entitled to the benefit of the doctrine of equitable tolling. *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003).

2.      Petitioner Did Not Timely File His Federal Petition

Petitioner pled guilty on June 4, 2002. Petitioner did not appeal his convictions and sentence. Thus, Petitioner's convictions became final on June 14, 2002, when the time to

17

serve Petitioner's notice of appeal expired. *See* Rule 203(b)(2), SCACR. Thus, the statute of limitations began to run on June 15, 2002, the day after his conviction became final. Petitioner had 365 days from June 14, 2002 to file his federal habeas action. The statute of limitations ran for 353 days from June 14, 2002 until June 2, 2003, the date Petitioner filed his PCR application.   The period of limitations was tolled upon Petitioner's filing of his PCR application, pursuant to § 2244(d)(2).   It remained tolled until May 13, 2005, thirty days after the PCR Court's Order was served on PCR counsel. SCACR Rules 203(b)(1), 243(b).

The statute of limitations resumed on May 14, 2005, the day after the PCR Court Order became final. Petitioner had 13 days from May 13, 2005 to file his federal habeas action. The statute of limitations ran on May 26, 2005. However, Petitioner did not file his federal habeas action until February 22, 2011—some five years, and nine months after the statute of limitations ran. Respondent argues that the filing of Petitioner's second PCR application and PCR appeal did not toll the AEDPA statute of limitations because the statute of limitations had already run when they were filed. *See* 28 U.S.C. § 2244(d)(2) ("The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."); *see also Harrison v. Hutchinson*, 209 F.3d 325, 327–28 (4th Cir. 2000); *Pearson v. North Carolina*, 130 F.Supp.2d 742 (W.D.N.C. 2001) (one-year limitations period for filing federal habeas not reset by filing of state court motion for post-conviction relief).   However, even if the

18

statute of limitations were tolled between the end of Petitioner's first PCR Action and the filing of his second PCR Action, the statute of limitations would have run on May 24, 2010, and Petitioner's federal habeas action would still be barred by the statute of limitations.  The undersigned recommends finding Petitioner is barred from federal habeas review unless he has demonstrated that he diligently has been pursuing his rights and that extraordinary circumstances prevented his timely filing, which could equitably toll the statute of limitations.

        3.    Petitioner Has Not Demonstrated Entitlement to Equitable Tolling.

To benefit from the doctrine of equitable tolling, Petitioner must show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland* at 2562 (*quoting Pace*, 544 U.S. at 418); *see also Rouse*, 339 F.3d at 246 (holding that, for equitable tolling to apply, petitioner must show that there was 1) an "'extraordinary circumstance,' 2) beyond his control or external to his own conduct, 3) that prevented him from filing on time.").

        a.    Petitioner Has Not Demonstrated Reasonable Diligence

The undersigned is of the opinion that Petitioner's untimely filing should not be excused by equitable tolling under *Holland's* two-pronged test. First, Petitioner has not demonstrated he was reasonably diligent in pursuing his rights below.  Petitioner's tardiness in filing this Petition in no manner suggests that Petitioner diligently pursued his rights.  Petitioner has not presented any facts to demonstrate that he acted diligently in pursuing this remedy.  Accordingly, the undersigned is of the opinion that Petitioner has

not satisfied the first-prong of *Holland's* two-pronged test for equitable tolling. *Holland* requires a petitioner to establish both prongs of the test to show entitlement to equitable tolling, so the court could end its analysis here.

          b.    Petitioner Has Not Demonstrated Extraordinary Circumstance

Independently, the undersigned opines that Petitioner cannot satisfy the second prong of the test because he has not set forth facts that could demonstrate an "extraordinary circumstance" kept him from timely filing this action. Petitioner has not presented facts sufficient to permit a finding of an extraordinary circumstance that could entitled Petitioner to equitably toll the AEDPA's statute of limitations.

Accordingly, the undersigned is of the opinion that the Petition should be dismissed on statute-of-limitations grounds. The filing was untimely, and Petitioner has not presented facts sufficient to support his argument that the limitations period should be equitably tolled. *See Harris*, 209 F.3d at 330 (noting petitioner has burden of showing equitable tolling). The undersigned recommends that Respondent's motion for summary judgment be granted.

III.    Conclusion

For the foregoing reasons, the undersigned recommends that Respondent's motion for summary judgment be granted and the Petition be dismissed with prejudice.

IT IS SO RECOMMENDED.

November 28, 2011                    Shiva V. Hodges
Florence, South Carolina            United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**